**Wenda K. SHALTRY, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. Civ. 93–2009 PHX EHC.**

United States District Court, D. Arizona.

Jan. 5, 1995.

Ronald Jeffrey Ellett, Phoenix, AZ, for plaintiff Wenda K. Shaltry.

Richard Glenn Patrick, U.S. Attys. Office, Janet Napolitano, U.S. Atty., Phoenix, AZ, for defendant U.S.

Richard Glenn Patrick, U.S. Attys. Office, Phoenix, AZ, for defendants U.S. Dept. of Justice, Virginia A. Mathis, William T. Neary, William F. Baity, Adrianne Kalyna, John E. Logan.

Keith M. Knowlton, Roberts & Rowley Ltd., Mesa, AZ, for intervenor NTL Assoc. BK Trustee.

## ORDER

CARROLL, District Judge.

On October 19, 1993, plaintiff filed a complaint challenging her removal as a member of the panel of Chapter 7 trustees in the District of Arizona. The five-count complaint alleges violations of: (I) the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.;* (II–IV) the Due Process Clause of the Fifth Amendment to the United States Constitution; and (V) tortious interference with plaintiff's constitutional and statutory rights.

Plaintiff seeks the following relief: an order restoring her to the panel of Chapter 7 trustees; an order enjoining defendants from removing plaintiff as a panel trustee unless or until good cause can be shown after affording plaintiff due process of law; damages, including lost wages; attorneys' fees; interest; and such other relief as the Court deems proper.

Defendants have moved for dismissal of plaintiff's complaint pursuant to Rule 12(b), Fed.R.Civ.P. Plaintiff has filed an opposition to defendants' motion to dismiss, and a motion for summary judgment. These motions were argued before the Court on August 23, 1994 and supplemental briefs have been filed.

## Factual Background

Plaintiff was appointed to the panel of Chapter 7 trustees for the District of Arizona (the "panel") on April 29, 1987. On May 16, 1988, following the certification of the Trustee Program in the District of Arizona, Virginia Mathis, then United States Trustee for the District of Arizona, reappointed plaintiff to the panel.

In a letter dated June 12, 1990, Mathis notified plaintiff of her removal from the panel. Plaintiff's removal from the panel was effective immediately; however, she was not removed from any case to which she had already been assigned. Rather, plaintiff was not assigned any new cases and her administration and closing of pending cases was to be monitored.

Mathis stated in the letter that plaintiff was being removed from the panel due to her performance as a trustee. Mathis identified general problems such as plaintiff's failure to close out cases on a timely basis and incidents demonstrating a lack of judgment. Among the specific complaints, Mathis alleged that plaintiff's action at a past sale made it appear to everyone at the sale, including Mathis' staff, that there was a collusive agreement between plaintiff and a particular bidder.

The parties disagree as to whether plaintiff had previously been advised of deficiencies in her performance; they agree that plaintiff was not afforded a hearing prior to her removal.

In a letter dated June 22, 1992 and addressed to Rep. Jon Kyl of the U.S. House of Representatives, defendant Logan summarized the circumstances of plaintiff's removal from the panel. At the time, Logan was the Director of the Executive Office for the U.S. Trustees. The letter indicates that Logan was responding to an inquiry from Kyl prompted by a letter to Kyl from plaintiff. In his letter, Logan states that while Shaltry's performance was not such as to cause the U.S. Trustee to seek her removal from all pending cases to which she had been assigned pursuant to 11 U.S.C. § 324, it was "sufficiently questionable" to warrant plaintiff's removal from the panel.[1]

## Dismissal of Certain Individual Defendants

Plaintiff's complaint names the following defendants: the United States; the United States Department of Justice; Virginia A. Mathis, individually and in her official capacity as U.S. Trustee for the District of Arizona; William Neary, individually and in his official capacity as Acting U.S. Trustee for the District of Arizona; William F. Baity, individually and in his official capacity as Deputy Director; Adrianne Kalyna, in her official capacity as U.S. Trustee for the District of Arizona; and John E. Logan, individually and in his official capacity as Director of the Executive Offices for U.S. Trustees.

Plaintiff has stipulated to the dismissal of the personal liability claims against defendants Mathis, Neary and Baity.

Defendants Mathis and Neary are *former* United States Trustees for the District of Arizona.[2] Defendant Kalyna is the current United States Trustees for the District of Arizona. Similarly, defendant Logan has been replaced by defendant Baity as Director. Pursuant to Fed.R.Civ.P. 25(d), when a public officer that is a party to an action in his or her official capacity resigns or is removed from office, the officer's successor is automatically substituted.

Accordingly, this case proceeds against the following defendants: the United States; the United States Department of Justice; Kalyna in her official capacity as the United States Trustee for the District of Arizona; Baity as the Director of the Executive Offices of U.S. Trustees; and John Logan in his individual capacity.

## Administrative Procedures Act Claim

■ Count I of the complaint asserts that defendants failed to comply with the due

---

**1.** 11 U.S.C. § 324(a) provides that "[t]he court, after notice and a hearing, may remove a trustee, other than the United States trustee, or an examiner, for cause."

**2.** These defendants, in their official capacity, were previously dismissed in case No. CV 93–0725, a related action commenced by plaintiff that, pursuant to an order entered April 28, 1994, is in abeyance pending further order of Court.

process requirements of the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.* Defendants seek dismissal of this claim for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

Defendants argue that this Court lacks authority under the APA to review the U.S. Trustee's decision to remove plaintiff from the panel because such decisions are committed to agency discretion and are not judicially reviewable. Plaintiff responds that she is entitled to judicial review because the U.S. Trustee failed to comply with the APA's procedural safeguards as set forth in 5 U.S.C. § 558(c).

The APA confers a general cause of action upon any person "adversely affected or aggrieved by agency action within the meaning of a relevant statute," 5 U.S.C. § 702, but withdraws that cause of action to the extent the relevant statute "preclude[s] judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1) and (2); *Adams v. Federal Aviation Administration,* 1 F.3d 955, 956 (9th Cir.1993).

The U.S. Trustee concedes that the office is an "agency" within the definition of the APA. (Answer at ¶ 6). Defendants implicitly concede that plaintiff's removal from the panel was "agency action" as defined by the APA. Accordingly, whether this Court may review defendants' decision to remove plaintiff from the panel under the APA turns on whether the removal of panel trustees has been committed to agency discretion.

28 U.S.C. § 586 provides, in pertinent part, that:

(a) Each United States trustee, within the region for which such United States trustee is appointed, shall—

(1) establish, maintain, and supervise a panel of private trustees that are eligible and available to serve as trustees in cases under chapter 7 of title 11;

\*   \*   \*   \*   \*   \*

(3) supervise the administration of cases and trustees in cases under chapter 7, 11, or 13 of title 11 by, whenever the United States trustee considers it to be appropriate—

\*   \*   \*   \*   \*   \*

(D) taking such action as the United States trustee deems to be appropriate to ensure that all reports, schedules, and fees required to be filed under title 11 and this title by the debtor are properly and timely filed;

\*   \*   \*   \*   \*   \*

(G) monitoring the progress of cases under title 11 and taking such actions as the United States trustee deems to be appropriate to prevent undue delay in such progress;

\*   \*   \*   \*   \*   \*

(5) perform the duties prescribed for the United States trustee under title 11 and this title, and such duties consistent with title 11 and this title as the Attorney General may prescribe.

Each U.S. Trustee, with the approval of the Director of the Executive Officer for United States Trustees (the "Director") is authorized to increase or decrease the total membership of the panel, or institute a rotation of membership to establish diversity on the panel (e.g. geographical diversity or diversity of experience). 28 C.F.R. § 58.1(b).[3] The qualifications for membership on panels of private trustees, and to retain eligibility therefor, are set forth at 28 C.F.R. § 58.3(b). Generally, these requirements concern fitness of character, education or experience, and lack of potential conflicts of interest. *Id.*

Apart from the above-cited regulations, there is nothing in the applicable statutes and regulations that specifically governs the removal of an individual from the panel. However, as outlined above, after appointment to a particular case, a private trustee may only be removed for cause, after notice and a hearing, by the Bankruptcy Court. 11

---

**3.** Pursuant to 28 C.F.R. § 58.5, the U.S. Trustees shall not discriminate on the basis of race, color, religion, sex, national origin or age in appointments to the private panel of trustees and shall assure equal opportunity for all appointees and applications for appointment to the private panel.

U.S.C. § 324(a). Furthermore, once the Bankruptcy Court removes a trustee from a case for cause, the trustee shall be removed in all other cases in which the trustee is serving unless the court orders otherwise. 11 U.S.C. § 324(b).

In support of their motion to dismiss, defendants argue that the U.S. Trustee's decision to remove a panel trustee from panel membership is committed to agency discretion because the statute and regulations are crafted in such a way as to leave a court no meaningful standard against which to judge the agency's exercise of discretion. Plaintiff responds that 5 U.S.C. § 558(c) provides a definitive standard for review that requires notice and opportunity to be heard.[4]

■ Plaintiff's argument is misplaced. "Before any review may be had at all [under the APA], a party must first clear the hurdle of § 701(a)." *Heckler v. Chaney*, 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1985). The issue of whether or not review may be had under the APA is independent of whether or not a violation of a particular protection under the APA occurred.

The Supreme Court in *Heckler* held that judicial review of an agency action is unavailable under the APA if the statute has committed agency action to the agency's discretion and "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830, 105 S.Ct. at 1655.[5]

■ Nonreviewability of agency action is the exception, not the rule. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). Indeed, the APA embodies a "basic presumption of judicial review." *Lincoln v. Vigil*, — U.S. ——, ——, 113 S.Ct. 2024, 2030, 124 L.Ed.2d 101 (1993) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507,

1511, 18 L.Ed.2d 681 (1967)). "[T]he mere fact that a statute contains discretionary language does not make agency action unreviewable." *Beno v. Shalala*, 30 F.3d 1057, 1066 (9th Cir.1994) (citing *County of Esmeralda v. U.S. Dept. of Energy*, 925 F.2d 1216, 1218–19 (9th Cir.1991)). Rather, "[s]uch a determination is statute specific ... and relates to the language of the statute and whether the general purposes of the statute would be endangered by judicial review." *County of Esmeralda v. U.S. Dept. of Energy*, 925 F.2d 1216, 1218 (9th Cir.1991), citing *Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047, 2052, 100 L.Ed.2d 632 (1988).

In *Adams v. F.A.A.*, a pilot examiner sought review of a Federal Aviation Administration (FAA) Flight Standard Service Director's decision not to renew plaintiff's Pilot Examiner designation. *Adams*, 1 F.3d at 955. Plaintiff had been designated a pilot examiner pursuant to the Federal Aviation Act (FA Act), 49 U.S.C.App. § 1355(a), (1988) that provides, in pertinent part:

In exercising the powers and duties vested in him by this chapter, the Secretary of Transportation may, subject to such regulations, supervision, and review as he may prescribe, delegate to any properly qualified private person ... any work, business, or function respecting (1) the examination, inspection, and testing necessary to the issuance of certificates. * * * The Secretary ... may rescind any delegation made by him pursuant to this subsection at any time and for any reason which he deems appropriate.

49 U.S.C.App. § 1355(a) (1988).

Although the FA Act authorized judicial review of orders issued by the Secretary, 49 U.S.C.App. § 1486(a), the Ninth Circuit concluded that it could not properly review the refusal to renew plaintiff's designation where the Act did not set out specific factors for an

---

**4.** § 558 sets forth certain procedural requirements that must be met before an agency may issue, suspend, or revoke a license.

**5.** *Heckler* involved a challenge by inmates sentenced to death by lethal injection to a decision of the Food and Drug Administration (FDA) not to take enforcement action against the use of drugs that, although approved by the FDA for

medicinal purposes, were not specifically approved for use in executions. 470 U.S. at 824, 105 S.Ct. at 1651. The Supreme Court held that an agency decision not to take enforcement action should be presumptively immune from judicial review under § 701(a)(2). *Id.* at 832, 105 S.Ct. at 1656.

FAA Administrator to consider in determining whether to rescind a delegation of power. *Id.* at 956. Because there was no judicially manageable standard by which to review the action of the Secretary, the Court lacked jurisdiction over plaintiff's claim. *Id.* at 957.[6]

In contrast to *Adams*, in *Beno v. Shalala* the Ninth Circuit considered a challenge to the Secretary of Health and Human Services' exercise of authority under 42 U.S.C. § 1315(a), which allows her to waive compliance with certain sections of the Social Security Act "to the extent and for the period [s]he finds necessary" for any project which, "in the judgment of the Secretary, is likely to assist in promoting the objectives of [the Aid to Families with Dependant Children (AFDC) program]." 30 F.3d at 1062. The Ninth Circuit distinguished the statute at issue in *Adams* because of the language limiting the exercise of authority: "waivers are allowed only for the period and extent necessary to implement experimental projects which are 'likely to assist in promoting the objectives' of the AFDC program." *Id.* at 1067. The purpose of the program is set forth with some specificity in 42 U.S.C. § 601.

The AFDC program also contains complex and detailed regulations. *Id.* Quoting the district court opinion, the circuit court determined that " 'it would be somewhat surprising were Congress to grant unreviewable discretion to the Secretary to exempt States from such an all encompassing series of statutory requirements.' " *Id.*

The Ninth Circuit concluded that judicial review of a waiver would not interfere with the purpose of § 1315(a) or endanger the statutory scheme of the Act. *Id.*

In contrast to the AFDC program, a review of the statutory and legislative history of the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598 (1978) indicates that Congress intended to delegate decisions as to panel membership to the individual U.S. Trustees:

> The Attorney General will prescribe the qualifications for panel membership, which will be uniform throughout the country ... However, the actual creation of the panels, the examination of candidates for membership on the panels ... will be done locally by United States trustees. United States trustees will also monitor the performance of panel members and standing chapter 13 trustees in order to determine whether they should be continued in or removed from panel membership or office.

House Rep. 95-598, at 102, 95th Cong., First Sess. (1978), *reprinted in* 1978 U.S.C.C.A.N. at 6063.

Plaintiff argues that every court to rule on the matter has found the U.S. Trustee's actions judicially reviewable under the APA. Motion at 6, citing *In re Myers*, 147 B.R. 221 (Bankr.D.Or.1992); *In re Gideon*, 158 B.R. 528 (Bankr.S.D.Fla.1993); and *In re Vance*, 120 B.R. 181 (Bankr.N.D.Okla.1990).

*Gideon* and *Vance* do not address the reviewability of matters committed to agency discretion.[7] In *Myers*, a standing Chapter

---

**6.** Plaintiff attempts to distinguish *Adams* because Adams' claims were based on Chapter 7 of the APA which applies only to " 'the provisions of this Chapter.' " 5 U.S.C. § 701. Plaintiff argues that her claim arises under Chapter 5 and, "[p]resumably, Congress understood the difference between the words 'Chapter' and 'Act.' If Congress had wanted to create an exception to the provisions of the entire Act, it would have said so."

First, plaintiff misquotes the statute at issue, 5 U.S.C. § 701(a).

Second, plaintiff's argument ignores 5 U.S.C. § 702, which confers a general right of action to any person adversely affected by agency action. As explained in *Adams*, 5 U.S.C. § 701 withdraws the cause of action conferred in § 702 when the agency action is committed to agency discretion. 1 F.3d at 956.

Finally, as outlined above, before any review may be had under the APA, the hurdle of § 701 must be cleared. *Heckler*, 470 U.S. at 828, 105 S.Ct. at 1654.

**7.** In *Gideon*, a panel trustee requested an order relieving her from the requirement of the U.S. Trustee that she submit all original checks and bank statements with the trustee's final report. 158 B.R. 528, 530 (Bankr.S.D.Fla.1993). The records had been lost or destroyed following the death of the accountant working on the case. *Id.* The U.S. Trustee opposed the request and suggested that the court "refrain from exercising its jurisdiction." *Id.* Relying on § 706(2)(A), the court concluded that it could review the U.S. Trustee's decision to oppose waiver of its requirement that original checks and statements be submitted. However, the court did not address

13 Trustee sought court authorization to pay the legal costs of defending an age discrimination suit filed by the trustee's former employee as "actual, necessary expenses incurred . . . as standing trustees" pursuant to 28 U.S.C. § 586(e). 147 B.R. at 224. The Executive Office for U.S. Trustees (EOUST) was authorized to approve costs of conducting the business of running Chapter 13 offices and routinely approved such costs. *Id.* However, the EOUST opposed payment of Meyers' legal costs and argued that the court lacked the authority to review its decision under § 701(a)(2).

The court held that it could review the EOUST's determination that the trustee's legal costs did not constitute "actual, necessary expenses" under 28 U.S.C. § 586(e) where there is no proof that the agency action was committed to agency discretion by law. *Id.* at 232. The court noted that the issue under § 586(e) did not require the exercise of expert judgment within the special competence of the agency, but essentially involved a legal determination. *Id.* at 232–233.

The statute involved in *Myers,* § 586(e), set forth a judicially manageable standard by which to review the administrative action; i.e., were the expenses actual and necessary. By contrast, the statute at issue in the instant case grants the U.S. Trustee the authority to take action it "deems to be appropriate." Thus, unlike the statute in issue in *Myers,* § 586 "fairly exudes deference to the [U.S. Trustee], and appears to [the Court] to foreclose the application of any meaningful judicial standard of review." *Webster v. Doe,* 486 U.S. 592, 600, 108 S.Ct. 2047, 2053, 100 L.Ed.2d 632 (1988).

*Constitutional Claims*

■ A conclusion that the language and legislative history of § 586 indicate that Congress meant to commit panel membership determinations to the discretion of the U.S. Trustee, however, does not foreclose plain-

tiff's charge that the termination of her panel membership deprived her of property and liberty interests under the Due Process Clause of the Fifth Amendment. *Webster,* 486 U.S. at 603, 108 S.Ct. at 2053. Where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear, *Johnson v. Robison,* 415 U.S. 361, 373–374, 94 S.Ct. 1160, 1168–1169, 39 L.Ed.2d 389 (1974), and the government must make a heightened showing of this intent. *See Webster,* 486 U.S. at 603, 108 S.Ct. at 2053 (citing *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 681, n. 12, 106 S.Ct. 2133, 2141–42, n. 12, 90 L.Ed.2d 623 (1986)).

In Counts II through IV of the Complaint, plaintiff alleges that her removal from the panel without notice and a hearing violated her due process rights under the Fifth Amendment with regard to: (II) her liberty interest in her good name, reputation, honor and integrity; (III) her liberty interest to pursue her profession; and (IV) her property interest in her membership on the Chapter 7 panel of trustees.

In this case, defendants do not argue that in enacting § 586, Congress intended to foreclose judicial review of constitutional claims arising under that statute. Rather, defendants argue the plaintiff's claims under the Due Process Clause fail because she was not deprived of a significant liberty or property interest.

*Fifth Amendment Due Process Argument*

■ A threshold requirement to a substantive or procedural due process claim is plaintiff's showing of a liberty or property interest protected by the Constitution. *Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972); *Wedges/Ledges of Calf., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir.1994).

■ Plaintiff argues that her membership on the panel constitutes a protected property interest under the constitutional test estab-

whether the U.S. Trustee's actions in opposing the waiver were ones committed to agency discretion. Thus, *Gideon* does not apply to the facts of this case.

In *Vance,* debtor sought review of the U.S. Trustee's refusal to conclude the meeting of cred-

itors. 120 B.R. 181, 183–184 (Bankr.N.D.Okla. 1990). The court concluded that the issue had not in fact been committed to agency discretion and also that the action was addressed by statute. *Id.* at 193–194. Thus, *Vance* is not directly applicable to this case.

lished in *Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) and *Alaska Airlines, Inc. v. City of Long Beach,* 951 F.2d 977 (9th Cir.1991).

In *Bell v. Burson,* the Supreme Court recognized that continued possession of a license, once issued, "... may become essential in the pursuit of a livelihood" and termination of the license, whether denominated a right or a privilege, requires compliance with procedural due process. *Bell,* 402 U.S. at 540, 91 S.Ct. at 1589. In *Bell,* a Georgia statute provided that the license of any uninsured motorist involved in an accident would be suspended unless the driver posted a bond in the amount of damages claimed by the aggrieved party. *Id.* at 535–36, 91 S.Ct. at 1587. An administrative hearing conducted prior to the suspension of the license excluded consideration of the motorist's potential fault or liability. *Id.* at 536, 91 S.Ct. at 1588.

Plaintiff, an itinerant minister who was required to drive in order to earn his living, challenged the suspension of his drivers license and registration without a determination of fault following an accident. *Id.* The Court concluded that the statute violated plaintiff's procedural due process rights:

> We hold, then, that under Georgia's present statutory scheme, before the State may deprive petitioner of his driver's license and vehicle registration it must provide a forum for the determination of the question whether there is a reasonable possibility of a judgment being rendered against him as a result of the accident.

*Id.* at 543, 91 S.Ct. at 1591.

In *Alaska Airlines,* the Ninth Circuit recognized that air carriers have a protected property interest in the number of flights allowed to depart from a municipal airport under a local noise ordinance, such that a proposed reduction in the number of permitted flights allocated entitled the carriers to notice and a hearing. 951 F.2d at 986. Relying on *Bell, supra,* the court concluded that the flight allocations were licenses that, while not the subject of an absolute entitlement, were essential in pursuit of a livelihood and could not be taken away without due process:

> In *Bell,* the Court held that the revocation of a license for cause could not occur before notice and a meaningful hearing was provided. *See* 402 U.S. at 541–42, 91 S.Ct. at 1590–91. Leave to land one's planes at the airport is similarly a property interest closely associated with the pursuit of a livelihood; therefore, due process also requires notice and a hearing before flight allocations can be revoked.

*Id.*

The drivers license at issue in *Bell* and the flight allocations at issue in *Alaska Airlines* are distinguishable from plaintiff's panel membership. Unlike the issuance of a drivers license or flight allocations, an appointment to the panel means solely that an individual is "eligible and available" to serve as a private trustee; it does not grant her an affirmative right to perform a particular act. Moreover, unlike a drivers license, an appointment to the panel "depends on an affirmative act of discretion by the granting official." *Dorfmont v. Brown,* 913 F.2d 1399 (9th Cir.1990) (no claim for denial of due process in revocation of security clearance).

In *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985), the Supreme Court found that a statutory promise of continued employment "except ... for ... misfeasance, malfeasance, or nonfeasance in office" creates a protected property interest in continued employment. Section 586 does not provide a panel member any such assurances of continued membership.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. The Court concludes that there is no property interest in plaintiff's panel membership and "[w]here there is no right, no process is due under the Constitution." *Brady v. Gebbie,* 859 F.2d 1543, 1547–48 (9th Cir.1988).

*Protected Liberty Interest in the Profession*

In Count Three of the complaint, plaintiff asserts that she has a protected liberty interest to pursue her chosen profes-

sion; to wit, her membership on the Chapter VII bankruptcy trustee panel.

An individual's liberty interest "is the interest an individual has in being free to move about, live, and practice his profession without the burden of an unjustified label of infamy." *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 366 (9th Cir.1976).

In *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959), the Supreme Court recognized that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts of the Fifth Amendment." Greene, an aeronautical engineer employed by a private manufacturer that produced goods for the armed services, was terminated when his government security clearance was revoked. Plaintiff contends that *Greene* "is on all fours" with the instant case insofar as plaintiff's panel membership is analogous to the revocation of Greene's security clearance.

*Greene* was decided on the narrow ground that no proper delegation of authority to implement security clearance programs, which could deprive affected persons of their job and the ability to pursue their chosen profession, had been made to the Department of Defense. 360 U.S. at 493, 79 S.Ct. at 1412. Contrary to plaintiff's argument, in *Greene* the Supreme Court "explicitly stated that it was not deciding what procedures were constitutionally compelled, but only that petitioner could not be deprived of certain procedures in the absence of authorization from the President or Congress." *Dorfmont v. Brown*, 913 F.2d 1399, 1404 (9th Cir.1990) (explaining *Greene* ).

In *Dorfmont*, the Ninth Circuit concluded that "[t]here is no right to maintain a security clearance, and no entitlement to continued employment at a job that requires a security clearance." *Id.* The decision rests on the conclusion that the right to pursue a job requiring a security clearance stands on the same footing as the security clearance itself: "If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance." *Id.* at 1403.

■ Plaintiff attempts to distinguish *Dorfmont*, arguing that Dorfmont had received three due process hearing before her security clearance was finally revoked. This argument fails because the requirements of due process do not apply unless plaintiff can show that she has a cognizable liberty or property interest in her panel membership. As the Supreme Court stated in *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983), "[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."

Because this Court determined, *supra*, that plaintiff does not possess a constitutionally protected property interest in her panel membership, it follows that plaintiff does not possess a liberty interest in pursuing her chosen profession as a Chapter 7 panel trustee.

*Protected Liberty Interest in Reputation*

■ In Count Two of the complaint, plaintiff asserts a protected liberty interest in her reputation which entitles her to procedural due process under the Fifth Amendment.

Plaintiff relies principally on *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In that case, the Supreme Court stated that although an at-will government employee does not have a legal entitlement to retain his job, "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and opportunity to be heard are essential." 408 U.S. at 574, 92 S.Ct. at 2707 (citations omitted). However, because there was no suggestion in *Roth* that Roth's good name, reputation, honor, or integrity were at stake, the Court did not focus on the contours of the due process right. *Id.*

■ Since *Roth*, the Supreme Court has held that the protections of the Due Process Clause do not attach to false or damaging accusations alone. *Paul v. Davis*, 424 U.S. 693, 712, 96 S.Ct. 1155, 1165–66, 47 L.Ed.2d 405 (1976); *Siegert v. Gilley*, 500 U.S. 226,

233, 111 S.Ct. 1789, 1794, 114 L.Ed.2d 277 (1991) ("[I]njury to reputation by itself was not a 'liberty' interest".). Rather, the alleged injury to reputation "must be accompanied by the loss or alteration of a right or status recognized by [ ] law before the Due Process Clause is implicated." *Hyland v. Wonder*, 972 F.2d 1129, 1142 (9th Cir.1992). This has become known as the "stigma-plus" test. *Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir.1991), *on reh'g* 963 F.2d 1220 (1992), *cert. denied*, — U.S. —, 113 S.Ct. 407, 121 L.Ed.2d 332.

> The 'plus' part of this test can be met by either the denial of a right specifically secured by the Bill of Rights (such as the right to free speech or counsel), or the denial of a state created property or liberty interest such that the Fourteenth Amendment's Due Process Clause is violated.

*Id.*

Here, plaintiff cannot demonstrate a loss of a recognizable property or liberty interest in conjunction with the allegation of injury to reputation. Nor has plaintiff alleged a violation of a right specifically secured by the Bill of Rights, such as the right to free speech or counsel. Defendants are entitled to dismissal of plaintiff's complaint.[8]

ACCORDINGLY,

**IT IS ORDERED** granting defendants' motion to dismiss plaintiff's complaint (Dkt. 12).

---

8. Because defendants are entitled to dismissal of plaintiff's statutory and constitutional claims, Count Five of the complaint alleging tortious interference with statutory and constitutional rights is also subject to dismissal.